## APPLEBY *v.* CITY OF BUFFALO.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 162.    Argued April 26, 27, 1911.—Decided May 29, 1911.

The right of this court to review the judgment of the highest court of a State is specifically limited by § 709, Rev. Stat., and, in cases such as this, depends on an alleged denial of a Federal right which the record shows was specially set up and claimed in, and denied by, the state court or that such was the necessary effect of the judgment.

Assignments of error made for the purpose of bringing the case to this court cannot originate the right of review here.

An exception in the state court that the judgment deprives plaintiff in error of his property without due process of law in violation of the Constitution of the United States only affords ground for an inquiry whether the proceedings themselves show a want of due process.

The Fourteenth Amendment forbids a State from taking private property for public use without compensation, *C., B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 226, but where the State provides adequate machinery for ascertaining compensation on notice and hearing which were availed of and there was no ruling by the state court which prevented compensation for property actually taken, there is no lack of due process because of the amount awarded, even if only nominal.

Judgment entered on authority of 189 N. Y. 163, affirmed.

THE facts, which involve the validity of an award for property taken in condemnation proceedings, are stated in the opinion.

*Mr. O. O. Cottle* and *Mr. Edmund P. Cottle* for plaintiff in error.

*Mr. Clark H. Hammond* for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

This case originated in a proceeding begun by the city of Buffalo to appropriate the lands of the plaintiff in error under the waters of the Buffalo River between the Buffalo Creek Indian Reservation line, at or near the crossing of Hamburg street, and the easterly city line of the city of Buffalo. These lands are said to lie under the waters for about seven miles in the circuitous winding of the river, and to embrace about one hundred and forty-one acres.

Application was made to the Supreme Court of the State of New York, at Buffalo, for the appointment of commissioners to ascertain the compensation to be made the owner for the lands described. The plaintiff in error appeared, and three commissioners were appointed to ascertain the just compensation to be awarded to the owner. The commissioners were duly sworn, viewed the premises, and heard a considerable amount of testimony, both for the city and the plaintiff in error, and made a report awarding compensation for the lands taken in the sum of six cents. The plaintiff in error excepted to the award, but the same was confirmed in the Supreme Court of New York. Plaintiff in error moved to set aside the order confirming the report, which was done, and thereupon a new order of confirmation was entered setting out the proceedings in greater detail.

From the order of the Supreme Court confirming the

report of the commissioners appeal was taken, by the plaintiff in error, to the Appellate Division of the Supreme Court of New York, and that court held that the only question presented by the appeal was the adequacy of the award, and reached the conclusion that the evidence showed conclusively that the property was valuable; that while the exact value was difficult to determine, the evidence established that it was more than nominal. 116 App. Div. 555.

The Appellate Division reversed the order of the Supreme Court, and adjudged that new commissioners should be appointed, at Special Term, to determine the compensation to be paid the owners of the premises in question.

The Appellate Division granted leave to the city to appeal to the Court of Appeals of the State of New York, and certified to that court four questions for review, as follows:

"1. Is Charles E. Appleby, as surviving trustee of the Ogden Land Company, under the facts in this proceeding, entitled to an award of more than six cents damages, on the City of Buffalo acquiring the fee to the lands under the waters of the Buffalo River in eminent domain proceedings, taken pursuant to its revised city charter, for the purposes of a public highway?

"2. Were the appraisal commissioners authorized and empowered, under the facts in this proceeding, to fix the actual damages of Charles E. Appleby, as surviving trustee of the Ogden Land Company, on the city of Buffalo acquiring the fee to the lands under the waters of the Buffalo River, at six cents, and to award said sum as and for the just compensation to be made to the said Charles E. Appleby, as surviving trustee of the Ogden Land Company?

"3. Does the City of Buffalo in this proceeding show a necessity for acquiring the fee of said lands?

"4. Did any of the exceptions call for a reversal of the order confirming the appraisal commissioner's report?"

The Court of Appeals overruled a motion to dismiss the appeal. (This ruling is reported in 189 N. Y. 537.) It answered the four questions propounded by the Appellate Division in an opinion reported in 189 N. Y. 163, the questions being answered as follows: "The first question should be answered in the negative. The second question should be answered in the affirmative. The third question is immaterial and not answered. The fourth question should be answered in the negative."

The Court of Appeals held, among other things, that the Buffalo River had been made a public highway by law; that for a large part of the distance through the city of Buffalo it is navigable to large boats from the lakes, and is a stream of much commercial importance. It held that the proceedings were under due authority of law as enacted in the charter of the city of Buffalo. In answering the questions the Court of Appeals said: "We have no great difficulty in answering these questions to the effect that the commissioners were authorized upon the evidence presented to them if they saw fit so to do to award only nominal damages for the land sought to be acquired by the City. In reaching this conclusion we have assumed as did the City in the institution of the proceedings that the respondent was vested with the fee of the river bed. Upon the other hand there does not appear to be any dispute that either by him or by the company whose rights he represents substantially all of the land abutting upon the river upon either side formerly owned by the Company has been conveyed away. This is a matter of importance as bearing upon the value of the bed of the stream, because if the bed and fee to the abutting lands were owned by the same party it very well might be that the possible connected use of the two

would be an element of much importance in passing upon
the value of the bed.

"Many witnesses were sworn before the commissioners
in regard to the value of this bed and the amount of the
damages which should be awarded for taking it. Their
evidence presented a well-defined question of fact, the
testimony ranging all the way from a valuation at nominal
figures to one of very substantial amount. In addition
to hearing the testimony of these witnesses the com-
missioners were under obligations to and we must assume
did view the premises to be taken. Various theories were
doubtless presented to them, as they have been to us
leading to the view that the land was of substantial value.
These theories are more or less speculative.

"We think that the commissioners were so justified by
the evidence in making the award which they did make
that we cannot say, as a matter of law, that there was no
evidence to sustain their conclusions."

The Court of Appeals further held that should the first
and second questions be regarded as questions of fact not
to be considered by it, and the third question be treated
as immaterial, there would be left for consideration only
the fourth question, and there being no exceptions calling
for a reversal of the order confirming the commissioner's
report the order of the Appellate Division would have
be reversed.

The case is now brought here for a review of the judg-
ment of the Court of Appeals, for this is the effect of the
proceeding in error, although under the practice in New
York the judgment of the Court of Appeals is remitted to
the Supreme Court of New York, and the writ of error
runs to that court.

The case has been elaborately argued, orally and in the
voluminous brief of the plaintiff in error, and many al-
leged errors of procedure in rulings upon construction of
state statutes, and questions of practice in the state courts

are pointed out. Indeed, the case has been argued, apparently, upon the theory that this court has the power, embraced in a general right to review, to correct errors in trials and procedure in the state courts.

This court has had frequent occasion to say that its right to review the judgment of the highest court of a State is specifically limited by the provisions of § 709 of the Revised Statutes of the United States. This right of review in cases such as the one at bar depends upon an alleged denial of some right, privilege or immunity specially set up and claimed under the Constitution, or authority of the United States, which it is alleged has been denied by the judgment of the state court. In such cases it is thoroughly well settled that the record of the state court must disclose that the right so set up and claimed was expressly denied, or that such was the necessary effect, in law, of the judgment. *Sayward* v. *Denney,* 158 U. S. 180, 183; *Harding* v. *Illinois,* 196 U. S. 78; *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 86, 97.

In the case at bar an elaborate assignment of error for the purpose of bringing the case to this court is found in the record, in which many rulings are referred to, which, it is alleged, resulted in deprivation of rights of Federal creation. But it is well settled that the assignments of error made for the purpose of bringing the case to this court cannot be looked to for the purpose of originating a right of review here. This must necessarily follow from the provisions of § 709, which permit a review in this court of rulings concerning claims of Federal right which were set up and denied in the state court. Neither the petition for writ of error in the state court after judgment, nor the assignments of error in this court, can supply deficiencies in the record of the state court, if such exist. *Harding* v. *Illinois,* 196 U. S. *supra,* and previous cases in this court therein cited.

The jurisdiction of the Court of Appeals of New York

was invoked because of the questions propounded by the
Appellate Division. A reading of those questions shows
that no right under the Federal Constitution was asserted
or suggested.

We look in vain in the record to find any claim of Fed-
eral right prior to the judgment in the Court of Appeals,
unless it is to be found in the third exception to the report
of the commissioners.

"Third. The said report is also contrary to and in vio-
lation of the Constitution of the United States, which
provides that private property shall not be taken for pub-
lic use without just compensation, and the sum awarded
by said report is less than just compensation."

If it be taken that the exceptions in this respect amount
to a claim of violation of the due process of law clause of
the Constitution, which protects against the taking of
private property without compensation, and that the ef-
fect of the judgment of the Court of Appeals is to deny
this claim, we proceed to inquire, do the proceedings show
a want of due process in the result reached and affirmed
by the Court of Appeals in its judgment answering the
questions propounded by the Appellate Division?

That the Fourteenth Amendment of the Federal Con-
stitution forbids a State to deprive any person of property
without due process of law, and to take private property
for public use without compensation amounts to such dep-
rivation, is recognized and affirmed in a case wherein the
subject was given much consideration. *Chicago, Burling-
ton & Quincy R. R. Co.* v. *Chicago,* 166 U. S. 226. After a
review of the authorities this court said:

"Due process of law as applied to judicial proceedings
instituted for the taking of private property for public use
means, therefore, such process as recognizes the right of
the owner to be compensated if his property be wrested
from him and transferred to the public. The mere form
of the proceeding instituted against the owner, even if he

be admitted to defend, cannot convert the process used into due process of law, if the necessary result be to deprive him of his property without compensation."

And furthermore:

"In our opinion, a judgment of a state court, even if it be authorized by statute, whereby private property is taken for the State, or under its direction for public use, without compensation made or secured to the owner, is, upon principle and authority, wanting in the due process of law required by the Fourteenth Amendment of the Constitution of the United States, and the affirmance of such judgment by the highest court of the State is a denial by that State of a right secured by that instrument."

In summing up the matter, the court said:

"We are permitted only to inquire whether the trial court prescribed any rule of law for the guidance of the jury that was in absolute disregard of the company's right to just compensation.

"We say 'in absolute disregard of the company's right to just compensation,' because we do not wish to be understood as holding that every order or ruling of the state court in a case like this may be reviewed here, notwithstanding our jurisdiction, for some purposes, is beyond question. Many matters may occur in the progress of such cases that do not necessarily involve, in any substantial sense, the Federal right alleged to have been denied; and in respect of such matters, that which is done or omitted to be done by the state court may constitute only error in the administration of the law under which the proceedings were instituted."

*          *          *          *          *          *          *          *

"In harmony with those views, we may say in the present case that the state court having jurisdiction of the subject matter and of the parties, and being under a duty to guard and protect the constitutional right here asserted, the final judgment ought not to be held to be in

violation of the due process of law enjoined by the Fourteenth Amendment, unless by its rulings upon questions of law the company was prevented from obtaining substantially any compensation. See *Marchant* v. *Penna. Railroad Company*, 153 U. S. 380."

The question of what amounts to due process of law in cases of this character came again before this court in the case of *Backus* v. *Fourth Street Union Depot Co.*, 169 U. S. 557. In summing up the essentials of due process of law in condemnation cases this court said: "All that is essential is that in some appropriate way, before some properly constituted tribunal, inquiry shall be made as to the amount of compensation, and when this has been provided there is that due process of law which is required by the Federal Constitution."

The only assignment of error which is here open for review does not show that the court below, by any ruling of law, deprived the owner of the right of compensation for his property. The alleged denial of Federal right rests upon the assertion that the damages were nominal, while the property taken was of greater value. But, as this court has heretofore held, if the State has provided adequate machinery for the ascertainment of compensation, upon notice and hearing, and the record discloses no ruling of law which prevented compensation to the owner for the property taken, there is no lack of due process.

The proceedings in the present case were under a statute which the highest court of the State has held adequate to require condemnation, and against which no constitutional objection was urged. The same court has found that the Buffalo River was a public highway, and a navigable stream; that there was testimony before the commissioners that the land company, of which the plaintiff in error is trustee, had formerly owned land adjacent to the river, which had been sold off, and that the only remaining title was in the lands covered by the river.

The record discloses that the testimony ranged all the way from nominal valuation to one of considerable amount. The Court of Appeals held that in view of these facts, the testimony of the witnesses, and view of the premises had by the commissioners, that it could not say, as a matter of law, that there was no evidence to sustain the commissioners' conclusions.

The record thus discloses that the plaintiff in error has had a hearing as to the value of his property before a board of commissioners acting under authority of law, which order was affirmed in a reviewing court; that he was again heard in the Appellate Division where that order was reversed, and was finally heard in the Court of Appeals, where the finding of the Appellate Division was in turn reversed. And the record fails to show any ruling of law, to which an exception was properly reserved on the ground of denial of Federal rights, which prevented the plaintiff in error from obtaining just compensation for his property.

*Judgment affirmed.*