Chlorine D. **BOLES**

v.

**John C. COX, Sr., et al.**

**Civ. A. No. 5466.**

United States District Court
E. D. Tennessee, N. D.

Feb. 24, 1966.

Chlorine D. Boles, pro se.

Clyde W. Key, W. P. O'Neil, Howard F. Jarvis, H. H. McCampbell, Jr., Knoxville, Tenn., for defendants.

ROBERT L. TAYLOR, Chief Judge.

■ The plaintiff, unrepresented by counsel, has filed a complaint against The Bank of Knoxville and seven named officials thereof; against Myron R. Ely, H. T. Kern, and Robert M. Child, as individuals, but each of whom, this Court judicially notices, are lawyers; and against A. G. Shumate, sued as an individual, who was sitting by interchange as Chancellor in Knox County, Tennessee. All defendants, as is the plaintiff, are citizens and residents of the State of Tennessee.

The complaint, although not too artfully or clearly drawn, alleges that jurisdiction is founded upon "The Fourteenth Amendment to the Constitution of the United States, particularly that part contained in 14 U.S.C. Section One * * * "

The amended complaint alleges that the cause arises out of the Fourteenth Amendment to the Constitution, particularly Title 28 U.S.C. § 1343, subsection (3) as it applies to the deprivation of property without due process, and under Title 28 U.S.C. § 1331, subsection 32 as it applies to the denial of equal protection of law, and "under sub. sec. 16 wherein the plaintiff relies on the protection due her under these rights, and the jurisdiction is founded thereon."

The actual charge, insofar as the Court can determine from the pleadings, is that defendants wrongfully and maliciously conspired to seize and divest plaintiff of all her property, owned by her individually, and community property owned jointly with her husband, for alleged business debts of her husband in which she had no interest. In so doing, plaintiff alleges that defendants "committed a legal fraud upon the Knox County Chancery Court." (Presumably in making erroneous allegations in the original bill.)

Three motions to dismiss have been filed: The first by The Bank of Knoxville and the seven named officials on the grounds (1) that the Court has no jurisdiction over the cause of action alleged in the complaint and (2) that the complaint fails to state a claim upon which relief can be granted; the second by Myron R. Ely, H. T. Kern and Robert M. Child (1) for lack of jurisdiction over the subject matter and (2) for failure of the complaint to state a claim upon which relief can be granted; and the third by A. G. Shumate, Chancellor, upon the ground that the complaint fails to state a claim upon which relief can be granted.

Subsequent to the oral hearing on February 6, 1966, plaintiff asked and was granted time in which to file additional brief and certain exhibits. The briefs and exhibits have been filed and examined.

The Court has difficulty in finding jurisdiction. The complaint states in the first paragraph, if the Court interprets it correctly, that jurisdiction rests upon the Fourteenth Amendment and particularly upon Section One thereof. Section One of the Fourteenth Amendment reads as follows:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Title 28 U.S.C. § 1343 subsection (3) provides:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \* \*

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage,

of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"

Title 28 U.S.C. § 1331, subsections 32 and 16 do not appear to exist.

■■■ Application of Section 1 of the Fourteenth Amendment to the allegations of the complaint is possible only as it may apply to action of Judge Shumate, the only state official made a defendant. As stated in Hodges v. United States, 203 U. S. 1, 14, 27 S.Ct. 6, 51 L.Ed. 65, "the 14th and 15th Amendments * * *, as repeatedly held, are restrictions upon state action * * *." This Section of the Fourteenth Amendment was drawn to protect persons against unlawful and arbitrary deprivation of property by the State, as the taking of property for public use without compensation. Appleby v. City of Buffalo, 221 U.S. 524, 530, 31 S. Ct. 699, 55 L.Ed. 838, or discrimination in assessing and collecting taxes. Iowa-Des Moines Bank v. Bennett, 284 U.S. 239, 52 S.Ct. 133, 76 L.Ed. 265. In Tracy v. Ginzberg, 205 U.S. 170, 178, 27 S.Ct. 461, 463, 51 L.Ed. 755, the Court said:

" * * * The decision of a state court, involving nothing more than the ownership of property, with all parties in interest before it, cannot be regarded by the unsuccessful party as a deprivation of property without due process of law, simply because its effect is to deny his claim to own such property. If we were of opinion, upon this record, that the money received by Ginzberg from O'Hearn really belonged to Tracy—upon which question we express no opinion—still it could not be affirmed that the latter had, within the meaning of the Constitution, and by reason of the judgment below, been deprived of his property without due process of law. Under the opposite view every judgment of a state court, involving merely the ownership of property, could be brought here for review—a result not to be thought of. The Fourteenth Amendment did not impair the authority of the States, by their judicial tribunals, and according to their settled usages and established modes of procedure, to determine finally, for the parties before it, controverted questions as to the ownership of property, which did not involve any right secured by the Federal Constitution, or by any valid act of Congress, or by any treaty. *Within the meaning of that amendment, a deprivation of property without due process of law occurs when it results from the arbitrary exercise of power, inconsistent with 'those settled usages and modes of proceeding existing in the common and statute law of England before the emigration of our ancestors, and which are shown not to have been unsuited to their civil and political condition by having been acted on by them after the settlement of this country.'* Bank of Columbia v. Okely, 4 Wheat. 235, 244, [4 L.Ed.2d 559]; [Den ex dem] Murray's Lessee v. Hoboken &c., 18 How. 272 [15 L.Ed. 372]. It cannot be said that the state court in this case, by its final judgment, departed from those usages or modes of proceeding."

■ Although it was possibly alleged that Chancellor Shumate participated in a conspiracy, such allegation alone is not enough to give jurisdiction here.

■ In the absence of a valid allegation of a breach of a provision of the United States Constitution or a federal statute, the Court has no jurisdiction under the diversity statute, 28 U.S.C. § 1332, since all parties are shown in the complaint to be citizens and residents of the State of Tennessee. Pan American Petroleum Corp. v. Superior Court etc., 366 U.S. 656, 663, 81 S.Ct. 1303, 1307, 6 L.Ed. 2d 584, where the Supreme Court said: "It is settled doctrine that a case is not cognizable in a federal trial court, in the absence of diversity of citizenship, unless it appears from the face of the complaint that determination of the suit depends upon a question of federal law."

In the quite recent case of Kenney v. Fox, 132 F.Supp. 305, 314, 315 (D.C. Mich.), Judge Starr, after making an ex-

haustive review of the cases in the light of the Civil Rights Statute, 28 U.S.C. § 1343, said:

"The foregoing authorities which I have cited and discussed and other authorities too numerous to mention conclusively establish the law in this country that a judge acting in good faith within his jurisdiction in his official judicial capacity is immune from civil liability for damages, and that the federal civil right statutes have not removed or abolished this immunity.

\* \* \* \* \* \*

"The allegations in plaintiff's complaint in the present case failed to show that he has suffered or will suffer the deprivation of a constitutional or civil right. The Constitution does not guarantee the plaintiff as a citizen against loss through erroneous decisions of state courts, nor does it guarantee uniformity of decisions by state courts.

"In the present case plaintiff Kenney, despite his assertion to the contrary, is in effect appealing from a state court decision and seeking to obtain federal court review of a state court decision which was adverse to his contentions, and he is seeking to relitigate in this federal court the issues involved and determined in the state court action. It may be stated as a well-recognized general rule that it is not within the province of a federal court to review state court decisions."

We come to the question of Judge Shumate's part in the alleged conspiracy. As to Judge Shumate, plaintiff averred:

" \* \* \* The latter being used willingly on his part to assure the others defendants hereto and herein that their unlawful action would be cleared of any procedural difficulties that might effectively endanger the concert of action against the plaintiff and her husband in Knox County Chancery Court Cause Number 40,906."

Judge Van Pelt, Federal Judge in Nebraska, in a thorough opinion in Rhodes v. Houston, D.C., 202 F.Supp. 624, 629, summarized the cases bearing upon the immunity of judges:

"1) As a general rule judges are immune from civil actions for damages for acts performed in the course of their official functions. This was the settled law of England and is similarly accepted in this country. Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871); Meredith v. Van Oosterhout, 286 F.2d 216 (8th Cir., 1960) (cert. denied 365 U.S. 835, 81 S.Ct. 749, 5 L.Ed.2d 745 (1961)); Niklaus v. Simmons, 196 F.Supp. 691 (D.Neb.1961).

"2) The passage of the federal Civil Rights Act did not abrogate this traditional immunity. This is the overwhelming weight of authority, which has been followed by the Court of Appeals for this Circuit (Tate v. Arnold, 223 F.2d 782 (8th Cir., 1955) and this District (Niklaus v. Simmons, supra). For the numerous cases in accord see Judge Delehant's opinion in the Niklaus case, supra, 196 F.Supp. at page 713.

"3) The recent opinion of the United States Supreme Court in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) does not, as plaintiff suggests, overturn or modify the doctrine of judicial immunity in a federal civil rights action. An examination of all federal cases which have cited Monroe v. Pape reveals that it has not yet been considered for its effect, if any, upon the well established rule of judicial immunity. This court, therefore, relies upon its own reading of that case, and concludes that it has no effect upon the doctrine and is not here in point.

"4) An exception to the rule of judicial immunity exists which is founded on a distinction between excess of jurisdiction and the absence of all jurisdiction. Bradley v. Fisher, supra. Where there is jurisdiction over the subject matter and the person there is immunity, and even though a judge acts in excess of his jurisdiction the immunity remains. See Meredith v.

Van Oosterhout, supra; Brictson v. Woodrough, 164 F.2d 107 (8th Cir., 1947), cert. denied 334 U.S. 849, 68 S.Ct. 1500, 92 L.Ed. 1772. But where an act is done in the clear absence of all jurisdiction and this is known to the judge there is no immunity. Johnson v. MacCoy, 278 F.2d 37 (9th Cir., 1960); Kenney v. Fox, 232 F.2d 288 (6th Cir., 1956), cert. denied Kenney v. Killian, 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956)."

These tests must be applied in examining the common law immunity of a judge to suit in a case involving the exercise of his judicial function. The Civil Rights Act has not changed this. In Kenney v. Fox, 232 F.2d 288, 292 (C.A.6), Judge Martin said, "We are of firm opinion that the common law rule of immunity of a judicial officer for acts done in the exercise of his judicial function, where he has jurisdiction over both parties and the subject matter, has not been abrogated by the Civil Rights Act. * * *" See also, Saier v. State Bar of Michigan, 293 F.2d 756 (C.A.6); Allen v. Groat, 283 F.2d 692 (C.A.6); Cuiska v. City of Mansfield, 250 F.2d 700 (C.A. 6); Puett v. City of Detroit, et al., 323 F.2d 591 (C.A.6). See: Moran v. Penan, 6–8–65, (C.A.1) cert. denied 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352, 12–7–65; rehearing denied 382 U.S. 1000, 86 S.Ct. 537, 15 L.Ed.2d 490, 1–18–66.

As we read the amended complaint, in the first part the plaintiff complains of the misuse of a guaranty agreement pledged by her in connection with the loan by the bank of money to her husband. The matters alleged seem to constitute a claim of fraud against the bank and its officials and counsel.

The estates of plaintiff and her husband were then thrown into receivership and the master's report was filed on February 3, 1964. Plaintiff then complains of an intolerable delay by the chancellor in reviewing exceptions to the report and that his memorandum ruling issued only after a petition for writ of mandamus was filed with the Supreme Court on February 23, 1965.

It is alleged that the chancellor affirmed a decree prepared by defendant Ely, including a finding "that there was no liability on the part of the plaintiff (sic)." It alleges that this constituted an adjudication of the rights of the plaintiff from which plaintiff did not appeal. It claims that plaintiff was thus denied due process and equal protection of the law, pointing out that the individual defendants collaborated with the defendant Ely to seize, divest and cheat the plaintiff out of her property, and that Ely arranged for defendant Kern to conspire and agree upon the terms and conditions upon which defendant Shumate would be selected as chancellor to sit by interchange for Chancellor Dawson who had recused himself. There is an allegation to the effect that Shumate was selected because he would make rulings favorable to the defendant bank and that defendant Kern assured defendant Shumate that the receivership action would be a routine affair once the matter was sustained in a hearing and that Shumate agreed to make a ruling sustaining the receivership. It is complained also that there was no order showing that Shumate would sit by interchange. Then there is the curious allegation No. 15 that Shumate is sued for conspiring outside his Court and that he is not sued as Judge. In the previous allegation No. 14 he is charged with an illicit understanding with others when he presided over the Court.

Shumate was accused of judicial indifference to the rights of plaintiff and her husband and that he went outside the pleadings and the proof to make rulings and judgments expressly contrary to the pleadings and record.

It was complained that Receiver Robert M. Child permitted the Bank to make certain misuses of plaintiff's property.

There are other allegations of like import which it does not seem necessary to recite. The burden of the amended complaint insofar as it is ascertainable, seems to allege that a fraud was perpetrated upon the plaintiff in depriving her of her property and that the Court

178

participated in the fraud by way of conspiracy with defendants Ely and Kern.

What has been said above with respect to the immunity of a judge for violation of rights under the Fourteenth Amendment seems also to apply here. In Bradley v. Fisher, cited above, Justice Field said:

"In the present case we have looked into the authorities and are clear, from them, as well as from the principle on which any exemption is maintained, that the qualifying words used were not necessary to a correct statement of the law, and that judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible * * * "

█ Judge Shumate clearly had the right to review and rule upon the master's findings in the receivership.

█ There is no clear absence of all jurisdiction on his part over the subject matter and since plaintiff did not appeal his decision, the effect of this lawsuit is to attempt to retry here what has been heard in the state courts. We are of the opinion that the immunity of the judge protects Chancellor Shumate from this type of action and the motion to dismiss as to him is granted.

█ All parties, including Judge Shumate, are, as indicated above, citizens and residents of the State of Tennessee. The complaint and amended complaint seem to allege only a fraud perpetrated by the various defendants upon this plaintiff and not a deprivation of rights under color of any State law. There is no diversity of citizenship and no Federal question. This Court has no jurisdiction. Rooker v. Fidelity Trust Company, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362; Reese v. Louisville Trust Company, 58 F.2d 638 (C.A.6).

The motions of the other defendants for a dismissal are, likewise, granted.