The **LANDOWNERS CONSIDERATION ASSOCIATION**, an unincorporated Association, on behalf of themselves and all others similarly situated, et al., Plaintiffs,

v.

The **MONTANA POWER COMPANY**, a Montana Corporation; J. E. Corette, Chairman of the Board; George W. O'Connor, President, W. W. Talbott, Vice-President and Sales Manager, Richard Davenport, Transmission Designs Engineer, R. M. Ball, Vice-President and Chief Engineer, all of Montana Power Company; Continental Pipe Line Company, a Delaware Corporation, W. L. Kygar, President, and C. R. Wilhite, Secretary, both of Continental Pipe Line Company, Defendants.*

No. 2834.

United States District Court
D. Montana,
Great Falls Division.

June 9, 1969.

---

* The action was commenced under the above caption. An amended complaint was later filed omitting Continental Pipe Line Company and its officers, who, on motion, were dismissed as defendants.

Leo Graybill, Jr., Gregory H. Warner, LaRue Smith, Jr., Great Falls, Mont., William E. Hunt, Chester, Mont., C. W. Leaphart, Jr., Helena, Mont., for plaintiffs.

William H. Coldiron, Corette, Smith, Dean & Wellcome, Butte, Mont., for defendants, The Montana Power Co., J. E. Corette, George W. O'Connor, W. W. Talbott, Richard Davenport and R. M. Ball.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

It appears from the amended complaint that the defendant, The Montana Power Company, a public utility, proposes to construct a line for the transmission of electrical energy from Great Falls, Montana, to Cut Bank, Montana. It is in the process of condemning rights of way across the lands of some of the plaintiffs. Plaintiffs seek to enjoin the construction of the line and ask for damages in the sum of $50,000.00.

The complaint alleges that the defendants are unlawfully exercising the power of eminent domain under state law and have conspired to deprive plaintiffs of their rights. It is inferable from the complaint that the Bureau of Reclamation had planned to put a 161 KV line in the area, that this line would have interconnected with other utilities and been adequate to serve the area needs, and would have been superior to the line proposed by The Montana Power Company. The defendants are alleged to have thwarted the Bureau's proposed line by procuring false testimony before a Congressional Committee, by fraudulently negotiating with the Bureau by failing to negotiate with other utilities, and by exercising the power of eminent domain on behalf of the Montana Power's proposed 115 KV line.

The complaint casts the plaintiffs in the roles of landowners and members of the general public. As landowners the complaint is that the taking is for a private purpose, the line is not located in a manner compatible with the greatest public good and the least private injury, and that basically the taking is for an inferior line which will not now, and in the future, adequately serve the area. As members of the general public plaintiffs make the same complaints but add to them claims that the line proposed to be built will have to be duplicated, fails to provide for interties with other utilities, and fails to provide an increase of the power available to preferential users of other utilities.

As exhibits to the motion to dismiss, the defendants have attached certified copies of orders of condemnation issued by the state district court affecting the landowner plaintiffs. These orders, which were issued after hearing, recite that the use for which the land is sought is a public use, that the taking is necessary, and that the line has been located

in a manner compatible with the greatest public good and the least private injury. It appears from the exhibits that appeals from those orders are now pending in the Supreme Court of Montana.

It does not appear from the complaint or otherwise that plaintiffs are presently suffering from any deficiency in electrical service; that they have been or will be deprived of an opportunity to be heard in the state courts on the issues of the public purpose of the taking, the necessity for it, or the amount of compensation. It does not appear that there will be a taking without the payment of compensation.

## JURISDICTION

■ At the outset the Court is faced with a problem of jurisdiction. The complaint broadly concludes[1] that the actions of the defendants have deprived plaintiffs of civil rights under 42 U.S. C.A. §§ 1983 and 1985. Jurisdiction is claimed under 28 U.S.C.A. § 1343. The defendants, in exercising rights of eminent domain, are acting under color of state law within the meaning of 28 U.S. C.A. § 1343(3).

Although, as hereafter indicated, plaintiffs' civil rights are not involved, the Court concludes that it does have jurisdiction. In Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the pleader asserted that the claim arose under the Fourth and Fifth Amendments to the Federal Constitution. It was later authoritatively determined that although plaintiffs may have had common law rights, they had no rights under the Fourth and Fifth Amendments. See the opinion in Bell v. Hood, on remand, 71 F.Supp. 813 (S.D.Cal.1947). In its opinion the Supreme Court said:

"* * * the party who brings a suit is master to decide what law he will rely upon and * * * does determine whether he will bring a 'suit arising under' the * * * [Constitution or laws] of the United States by his declaration or bill."[2]

So here the assertion that the plaintiffs' federally protected rights have been invaded gives the Court jurisdiction to examine the rights alleged and determine whether they are federally protected.

This result, as to jurisdiction, is in accord with the philosophy expressed in Joe Louis Milk Company v. Hershey, 243 F.Supp. 351, 354–355 (N.D.Ill.1965):

"Experience teaches that the wiser and better practice is for the court to assume judisdiction for the purpose of determining whether the complaint

---

1. Similar allegations have been held insufficient to warrant the exercise of federal jurisdiction. Van Daele v. Vinci, 294 F. Supp. 71 (N.D.Ill.1968).

2. 327 U.S. at 681, 66 S.Ct. 773, 775, *citing* The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913). The quotation may not apply at face value in all cases involving a claim of deprivation of civil rights. The jurisdiction in Bell v. Hood was found in 28 U.S.C.A. § 1331(a). There was a federal question and a requisite amount in controversy. 28 U.S.C.A. § 1343 differs from 28 U.S.C.A. § 1331 (a) in that under § 1343 the action must be "authorized by law to be commenced" while that is not true of § 1331. It may be that this language requires the court as a condition to jurisdiction to solve the federal question of whether the "action is authorized by law to be commenced." An action is authorized under 42 U.S.C.A. § 1983 against persons who, under color of state law, deprive any person of any right protected by the Constitution. Since the court has held that the defendants are acting under color of state law, in the exercise of the power of eminent domain, this action is authorized if a federal right is involved. Hence, the court here is faced with the exact problem posed by Bell v. Hood, are the rights alleged to have been violated federally protected? A different question would be posed if defendants were not acting under color of state law. Then the action would not be one "authorized" as required by § 1343, Title 28 U.S.C.A. See Schroeder v. State of Illinois, 354 F.2d 561 (7 Cir. 1965) where, although an eminent domain proceeding was involved, in the peculiar posture of the case, the action was against individuals not acting under color of state law.

states a claim upon which relief can be granted."

See Love v. Novarro, 262 F.Supp. 520 (C.D.Cal.1967).

## ON THE MERITS

 It is essential to the claim that the violation of some rights protected by the Constitution or laws of the United States be shown.[3] The Court has been unable to find any federally protected rights that have been violated.

The so-called Civil Rights Acts do not apply. §§ 1981 and 1982, Title 42 U.S. C.A. both relate to equality of treatment. These sections which, at the time of their enactment, were designed to protect the then recently liberated Negro, may now be applicable to relationships other than racial, but they cannot, by virtue of their language, affect any conduct which does not result in some kind of inequality. The fact that plaintiffs' lands are taken and other people's lands are not is not the kind of inequality to which the Acts refer. If they did, there would be no power of eminent domain.

The same may be said of § 1985, Title 42 U.S.C.A. It is narrowly drawn. In Collins v. Hardyman, 341 U.S. 651 on page 660, 71 S.Ct. 937, on page 941, 95 L.Ed. 1253 (1951) the Supreme Court said:

" * * * It is apparent that this part of the Act defines conspiracies of a very limited character. They must, we repeat, be 'for the purpose of *depriving* * * * of the *equal protection of the laws,* or of *equal privileges and immunities under the laws.'*

"Passing the argument, fully developed in the *Civil Rights Cases,* that an individual or group of individuals not in office cannot *deprive* anybody of constitutional rights, though they may invade or violate those rights, it is clear that this statute does not attempt to reach a conspiracy to deprive one of rights, unless it is a deprivation of equality, of 'equal protection of the law,' or of 'equal privileges and immunities under the law.' That accords with the purpose of the Act to put the lately freed Negro on an equal footing before the law with his former master. The Act apparently deemed that adequate and went no further."

Whatever the conspiracy alleged here may have accomplished, it did not accomplish a deprivation of equal protection or equal privileges.

 The Fourth and Fifth Amendments to the Federal Constitution afford no protection, since they are directed at the federal government.[4]

If a federally protected right is to be found, it must be in the Fourteenth Amendment. What has been said with respect to equality of treatment under the anti-discrimination statutes is applicable to the equal protection clause of the Fourteenth amendment.

 It is claimed that the privileges and immunities of the plaintiffs are being violated. The privileges and immunities clause of the Fourteenth Amendment relates to privileges and immunities of citizens of the United States. It has never been suggested that it is a privilege or immunity of a citizen of the United States to be free from the exercise of right of eminent domain.[5]

---

3. Powell v. Workmen's Compensation Board of State of New York, 327 F.2d 131 (2 Cir. 1964); Birnbaum v. Trussell, 371 F.2d 672 (2 Cir. 1966); Curry v. Ragan, 257 F.2d 449 (5 Cir. 1958); Ream v. Handley, 359 F.2d 728 (7 Cir. 1966); Bell v. Hood, 71 F.Supp. 813 S.D.Cal.1947); Love v. Navarro, *supra*; Van Daele v. Vinci, *supra*.

4. Bell v. Hood, 71 F.Supp. 813 (S.D.Cal. 1947).

5. An eminent domain proceeding could be used for the purpose of thwarting the equal protections and privileges and immunities clause of the Fourteenth Amendment. In the case of Nashville I–40 Steering Committee v. Ellington, 387 F. 2d 179 (6 Cir. 1967), a case with racial overtones, it was alleged that a highway route was selected to discriminate against the Negro segment of Nashville's population. In Progress Development Corp. v.

■ As to the claims of the plaintiffs as members of the public, it is not a privilege and immunity of a citizen of the United States to have a Bureau of Reclamation power line in his area, nor to have a private power line with interties with other utilities, or which furnishes extra power for the preferred customers of other utilities. It the plaintiffs here are not customers of The Montana Power Company, it is probable that many of the complaints made are made without any basis in right other than the political rights to advance the cause of public power. If they are customers, the rights involved are protected by the laws and rules regulating public utilities and not by the privileges and immunities clause of the Fourteenth Amendment.

■ As to due process, the Montana Constitution prohibits the taking of private property for public purposes without just compensation.[6] The law of Montana defines public uses,[7] one of which is for electric power lines, and provides that prior to the taking it must appear that the use is authorized by law and that the taking is necessary.[8] Provision for notice and hearing is made.[9] There is no intimation in the complaint that plaintiffs have been or will be denied a right to be heard in the state court, or that, as a result of state court action, just compensation will not be paid. This is sufficient to distinguish this case from Blume v. City of Deland, 358 F.2d 698 (5 Cir. 1966). The exercise by a state or those acting under it, of rights of eminent domain does not offend due process.[10] If the allegations of the complaint to the effect that the line proposed to be built is inadequate, that the line proposed to be constructed by the Bureau of Reclamation would more adequately serve the area, and the other similar allegations be taken to establish that the state court erred in its finding of public necessity, still there is no showing of want of due process. The Supreme Court of the United States has said:

"In condemnation proceedings as in lawsuits generally the Fourteenth Amendment is not a guaranty that a trial shall be devoid of error. West Ohio Gas Co. v. Public Utilities Commission (No. 1), 294 U.S. 63, 70 [55 S.Ct. 316, 79 L.Ed. 761]. To bring about a taking without due process of law by force of such a judgment, the error must be gross and obvious, coming close to the boundary of arbitrary action. The test has been differently phrased by different judges and in different contexts. At times we find the statement that the Constitution is not infringed unless there has been 'absolute disregard' of the right of the owner to be paid for what is taken. Chicago, B. & Q. R. Co. v. Chicago, 166 U.S. 226, 245, [17 S.Ct. 581, 41 L.Ed. 979]; Backus v. Fort Street Union Depot Co., 169 U.S. 557, 565, [18 S.Ct. 445, 42 L.Ed. 853]; Appleby v. Buffalo, 221 U.S. 524, 532, [31 S.Ct. 699, 55 L.Ed. 838]. At other times we are told that due process is not lacking unless 'plain rights' have been ignored, with a reminder that much will be overlooked when there is nothing of unfairness or partiality in the course of the proceedings. McGovern v. New York, supra, [229 U.S. 363], at p. 373, [33 S.Ct. 876, 57 L.Ed. 1228]. From the very nature of the problem these phrases and others like them are approximate suggestions rather than scientific definitions. In last resort the line of division is de-

---

Mitchell, 286 F.2d 222 (7 Cir. 1961), if what plaintiffs alleged was true, the whole purpose of the condemnation was to prevent Negroes from purchasing homes in a planned development by taking the land for park purposes.

6. Mont.Const., Art. III, § 14.

7. R.C.M.1947, § 93–9902.

8. R.C.M.1947, § 93–9905.

9. R.C.M.1947, §§ 93–9905, 93–9922.

10. Chicago, Burlington & Quincy Railroad Co. v. Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897); Roberts v. City of New York, 295 U.S. 264, 55 S.Ct. 689, 79 L.Ed. 1429 (1935).

pendent upon differences of degree too subtle to be catalogued. Hudson County Water Co. v. McCarter, 209 U.S. 349, 355, [28 S.Ct. 529, 52 L.Ed. 828]; Klein v. Board of Supervisors, 282 U.S. 19, 23, [51 S.Ct. 15, 75 L.Ed. 140]. Cf. Davidson v. New Orleans, 96 U.S. 97, 104, [24 L.Ed. 616]. One cannot hope to mark its bearings in a sentence or a paragraph. Enough for present purposes that when the hearing has been full and candid, there must ordinarily be a showing of something more far-reaching than one of dubious mistake in the appraisal of the evidence. Due process is a growth too sturdy to succumb to the infection of the least ingredient of error. 'It takes more than a possible misconstruction by a court to make a case under the Fourteenth Amendment.' Seattle, Renton & So. Ry. Co. v. [State of Wash. ex rel.] Linhoff, 231 U.S. 568, 570, [34 S.Ct. 185, 58 L.Ed. 372]." [11]

█ In the state court plaintiffs might have urged all of the matters alleged here in support of their position as to necessity. They have a right on the appeal now pending to demonstrate the error of the state trial judge, if he was in error in finding necessity and public

use. The due process clause does not make the federal district court an appellate court sitting to review the alleged errors of state trial judges.

In general accord with what is said here are: Green Street Association v. Daley, 373 F.2d 1 (7 Cir. 1967);[12] Robinette v. Chicago Land Clearance Comm., 115 F.Supp. 669, (N.D.Ill.1951); Sunflower Co. Col. Bapt. A. v. Trustees of Indianola M. S. S. D., 369 F.2d 795 (5 Cir. 1966).

The Court has considered the amended complaint together with the exhibits attached to defendants' motion to dismiss and treats the motion to dismiss as a motion for summary judgment. The motion for summary judgment as to both counts in the complaint is granted for the reason that no federally protected rights are shown to have been violated.

The plaintiffs are denied all relief.

The judgment will operate as an adjudication on the merits, insofar as rights under the Federal Civil Rights Acts are concerned. The dismissal will not operate as an adjudication on the merits as to any rights or remedies plaintiffs may have in the state courts on grounds other than those given by the Federal Civil Rights Acts.

11. Roberts v. City of New York, *supra*, Note 10, 295 U.S. at 277–278, 55 S.Ct. at 691–692.

12. In oral argument plaintiffs sought to distinguish Green Street Association v. Daley, *supra*, on the ground that it involved a public use, whereas, in this case the use is alleged by plaintiff to be private. There is such an allegation in the complaint. The allegation is not amplified. It is flatly contradicted by the findings of the state court. The defendant, The Montana Power Company, is a public utility; it is subject to regulation by the Montana Public Service Commission, both as to rates and practices. It is required to furnish reasonably adequate service at reasonable rates. (Title 70 R.C.M.1947) The service and the charges for the energy to be transmitted over the proposed line will be subject to regulation, as will the line itself. (Great Northern U. Co. v. Public Ser. Com., 88 Mont. 180, 293 P. 294 (1930)). Under these circumstances the use cannot be a private use.