Francis J. CAHILL et al., Plaintiffs,

v.

CEDAR COUNTY, IOWA, et al.,
Defendants.

No. 72–C–40–CR.

United States District Court,
N. D. Iowa,
Cedar Rapids Division.

Dec. 5, 1973.

40

William L. Meardon, Iowa City, Iowa, for plaintiffs.

Edward W. Kemp, Tipton, Iowa, for defendants.

Before STEPHENSON, Circuit Judge, and McMANUS and HANSON, Chief District Judges.

PER CURIAM.

This matter is before the court on the parties' cross-motions for summary judgment, filed by defendants April 27, 1973, and by plaintiffs July 5, 1973.

In this action plaintiffs challenge the constitutionality of Iowa Code Chapter 306 under the Fifth and Fourteenth Amendments of the United States Constitution, as violative of due process and equal protection. Plaintiffs further allege that 42 U.S.C. §§ 4601–4655 are ap-

plicable here and require defendant Cedar County Board of Supervisors to conduct the condemnation proceedings pursuant to Chapters 471–472 of the Iowa Code rather than Chapter 306. Plaintiffs also claim that the use of Chapter 306 violates 42 U.S.C. §§ 1982 and 1983, and finally that Chapter 306 is unconstitutional under art. 1, §§ 6, 9 and 18 of the Iowa Constitution.

This matter was submitted for decision on a stipulated set of facts and has been argued in written briefs. A three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284 on October 25, 1973.

The facts are uncomplicated. There is no genuine issue as to any material fact and defendants are entitled to judgment as a matter of law. Rule 56, F.R. C.P. Defendants seek to condemn plaintiffs' land under Chapter 306 of the Iowa Code and have fully complied with Chapter 306 procedure. Plaintiffs object to the use of Chapter 306 on the grounds noted above and demand that condemnation be effected under Chapters 471 and 472 of the Iowa Code. These statutes provide a panoply of procedural advantages for plaintiffs which are not available to them under Chapter 306. Plaintiffs seek an injunction[1] against the use of Chapter 306 by the defendant county board of supervisors and a declaratory judgment pursuant to 28 U.S.C. § 2201.

■ Initially it must be observed that the equal protection clause does not exact uniformity of condemnation procedure nor does the due process clause guarantee any particular form thereof. Dohany v. Rogers, 281 U.S. 362, 369, 50 S.Ct. 299, 74 L.Ed. 904 (1930).

*Equal Protection*

■ Plaintiffs contend that Iowa Code § 306.19(4) denies that equal protection of law guaranteed by the Fourteenth Amendment in that it makes an arbitrary and unreasonable classification of condemnees. The subsection states in part that

Proceedings for the condemnation of land for any highway shall be under the provisions of Chapter 471 and 472. Provided that, in the condemnation of right of way for secondary roads, the board of supervisors may proceed as provided in sections 306.28 to 306.37.

Chapters 471 and 472 afford condemnees a number of advantages, generally of a procedural nature,[2] which are not available under Chapter 306.

Plaintiffs' position is that Chapter 306 unconstitutionally carves out from the general field of condemnees an arbitrary and unreasonable class, viz. those whose land is condemned by county boards of supervisors for secondary road construction, and permits unfairly discriminatory treatment of this class as compared to condemnees who are proceeded against under Chapters 471 and 472. Plaintiffs cite as authority for the unconstitutionality of this classification the following decisions: Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); Sheard v. Department of Social Welfare, 310 F.Supp. 544 (D.C.1966). While each of these cases did indeed invalidate a state statutory classification as violative of equal protection, they are not in point here. None of the asserted

---

1. Plaintiffs do not specify whether the injunction sought is temporary or permanent or both. In view of the present posture of the case, the request will be considered as for a permanent injunction only.

2. Among these are: (1) assessment of damages by an impartial six member compensation commission, 472.4; (2) ten days written notice of the commission's view of the premises, 472.8; (3) specification of items of damage by the commission upon request of the condemnee, 472.14; (4) the automatic provision to condemnee of a copy of the appraisal at least ten days prior to the date of contact, 472.45.

authorities dealt with eminent domain.[3] All involved the absolute denial to one class of a right granted another class, with the classification in each case having either an insufficiently rational relation to the object of the legislation or being an infringement on a fundamental constitutional right without the required supports of a compelling state interest and narrow drafting.[4]

The legislative classification at issue here is not such a one. The condemnee's interest in the procedural details of a state's eminent domain proceeding has never been held to rise to the level of a fundamental constitutional right, so the "close scrutiny" approach employed in such cases is inappropriate here. Neither is the classification here one "inherently suspect."[5] The law with respect to such classifications as that made by Chapter 306 has been stated as requiring that "the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike," Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1919), and that "statutory classifications will be set aside only if no grounds can be conceived to justify them," McDonald v. Board of Election, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1968).

Thus, the classification effected by § 306.19(4) is to be examined under the rational basis rather than the close scrutiny approach, coming before the court clothed in a presumption of constitutionality and entitled to the reasonable exercise of judicial imagination for the ascertainment of a proper reason for its existence, in light of the objective of the statute. This examination reveals the statute to be constitutional.

Iowa Code § 306.2 divides the state highways into four systems: primary roads, institutional roads, secondary roads and state park roads. The secondary road system is subdivided into farm-to-market roads and local secondary roads, and jurisdiction over this system is reposed by § 306.4 in the county boards of supervisors. These roads are intended to carry slower and lighter traffic (both in terms of numbers and weight of vehicles) than are primary roads and require the taking of a narrower strip of land, so are less expensive. Secondary roads are utilized mainly by local intra-county traffic, and in light of these characteristics the legislature could reasonably have desired to establish an expedited condemnation procedure to aid in the efficient and economical establishment and alteration by the local authority of this important local road system.[6]

3. In brief, *Eisenstadt* struck down a Massachusetts statute prohibiting the distribution of contraceptives to single persons but allowing distribution to married persons; *Levy* invalidated a Louisiana statute barring recovery by an illegitimate child for the wrongful death of its mother while permitting recovery by a legitimate child; *Morey* held unconstitutional an Illinois statute allowing the sale of money orders in retail establishments by only one specified company; *Sheard* struck down Iowa's nine-year residency requirement for old age assistance.

4. The following have been held to be such fundamental rights: ability to procreate, Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); right to vote, Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169

(1966); Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); right to unimpeded interstate travel, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); right of access to the courts, Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

5. These classifications include race, Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944); wealth, *Harper*, n. 4 supra; political allegiance, Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); illegitimacy, Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); and alienage, *Korematsu*, supra.

6. § 306.19(4) grants the board of supervisors broad discretion in choosing between Chapters 306 and 471, 472. Plaintiffs and defendants agree that the exercise of this

## Due Process

The constitutionality under the Fourteenth Amendment of Chap. 306 depends not only on the rationality of the classification but also upon the compatibility of the procedural provisions with the concept of due process of law. Plaintiffs contend that Chap. 306 violates due process because its provisions are insufficient to guarantee just compensation as required by the Fifth Amendment. Plaintiffs allege that the 1950 revision of the Iowa Code introduced the constitutional infirmity by allowing the boards of supervisors the option now found in 306.19(4). Plaintiffs' argument is that prior to 1950, Iowa Code §§ 306.51–306.59 and 306.61 were to be employed only in condemnations of land for minor road alterations, as evidenced by the inclusion of these sections in the Chapter 306 division entitled "Changes in Roads, Streams and Dry Runs." However, plaintiffs continue, in 1950 these sections were made available for use in condemnations connected with major secondary road alterations and establishment of new secondary roadways, a purpose for which they were assertedly inadequate to provide due process resulting in just compensation. It is undisputed that the procedure followed by defendants here pursuant to 306.28–306.-37 is substantially the same as that required by 306.51–306.59 and 306.61 of the 1950 Code, and plaintiffs thus claim that they have been subjected to constitutionally deficient procedure.

Plaintiffs cite and the court has discovered neither decision nor legislative history to support the contention that the statutory ancestors of 306.28–306.37, and thus the procedure currently mandated by those provisions, should be considered valid only for minor condemnations related to small changes in roads or watercourses. Plaintiffs' only support for this proposition is an inference drawn from the division title, "Changes in Roads, Streams and Dry Runs," and such support as this affords must be dependent not upon any word directly modifying "Changes" but upon the assumptions that any changes in streams or dry runs would be minor by nature and that changes in roads would be of the same magnitude. This is too slender a reed to support such a heavy claim as that of plaintiffs.

Plaintiffs allege no specific statutory derogations from due process in their historical argument but allege that a redefinition of just compensation has occurred since Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463 (1893), and that 306.28–306.37 has not been amended to comport with the evolving standards of just compensation. In *Monongahela*, Justice Brewer writing for the Court said of just compensation that "There can, in view of the combination of those two words, be no doubt that the compensation must be a full and perfect equivalent for the property taken. . . . Whatever be the true value of that which [the condemnor] takes from the individual owner must be paid to him, before it can be said that just compensation for the property has been made." The developments in the concept of just compensation since that decision have involved the problem of what specific items should be included in the definition of "property taken." Certainly, cases since *Monongahela* have added to the list of considerations to be taken into account in determining just compensation from the viewpoint of the condemnee.[7] Plaintiffs cite United

---

discretion during the course of one secondary road project to condemn some tracts under Chap. 306 and others under Chaps. 471, 472 would raise a grave equal protection issue as to this application of 306.19(4). However, this issue is not before the court, defendants disclaim any intention to so proceed and the mere possibility that this situation may arise in the future has no effect on the resolution of the instant case.

7. Indeed *Monongahela* is itself an example of this judicial evolution, as the first holding that value of a state franchise should be considered as part of just compensation along with the physical facilities appropriated.

States v. General Motors, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945), as an illustration of this process. Further, plaintiffs attempt to predicate the due process unconstitutionality of Chap. 306 thereon, since that law does not provide for the inclusion of loss of future profits, moving expenses and loss of goodwill in just compensation as plaintiffs claim is required by *General Motors*, supra. The answer is twofold: First, *General Motors* does not stand for the proposition claimed, and in fact stands for the reverse. In that case the Supreme Court said that when, as here, the condemnor takes the fee, the rule is that

> compensation for that interest does not include future loss of profits, the expense of moving removable fixtures and personal property from the premises, the loss of good-will which inheres in the location of the land, or other like consequential losses which would ensure the sale of the property to someone other than the sovereign . . . the courts have generally held that they are not to be reckoned as part of the compensation for the fee taken by the Government. We are not to be taken as departing from the rule they have laid down, which we think sound.

So, this decision excludes from just compensation those elements precisely of which plaintiffs claim Chap. 306 uncon-

8. The *General Motors* contribution to the correspondence between law and economic reality is its inclusion in just compensation for the taking of a short-term leasehold from a long-term lessee such items as removal of fixtures and personal property, the taking, damage or destruction of the original lessee's equipment or fixtures and the disparity between long- and short-term rental value. This, of course, is not the instant case.

9. § 472.42 does appear to increase the right to compensation beyond the constitutional minimum by providing a displacement allowance for those persons forced to move by the condemnation. The instant case does not involve a forced move, so plaintiffs would derive no benefit from proceeding under 472 rather than 306.

stitutionally deprives them.[8] Secondly, and more fundamentally, the amount required to satisfy the just compensation requirement is for judicial rather than legislative determination. *Monongahela*, supra. Appleby v. Buffalo, 221 U.S. 524, 31 S.Ct. 699, 55 L.Ed. 838 (1911). 1 Nichols, Law of Eminent Domain § 4.-10 (rev. 3rd ed. 1973). Iowa Const. Art. I, §§ 9, 18. Fleming v. Hull, 73 Iowa 598, 35 N.W. 673 (1887). Op.Atty.Gen. 1930, p. 59. The legislature may provide by statute for more than the minimum constitutional entitlement as declared by the courts, Electric Co. v. Dow, 166 U.S. 489, 17 S.Ct. 645, 41 L.Ed. 1088 (1896), but the definition of constitutional just compensation is reserved to the judiciary. Therefore, that Chap. 306 specifies no elements to be considered in determining just compensation is not constitutionally objectionable and, in fact, Chaps. 471, 472 properly do not specify compensable items of damage either.[9]

In sum then, Chap. 306 assures plaintiffs due process by providing for notice and an opportunity to be heard,[10] administrative assessment of damages by an impartial tribunal,[11] and correctly leaves final determination of the amount of just compensation to the judiciary.

### *42 U.S.C. § 4601 et seq.*

■ Plaintiffs next claim that their property was acquired during the course

10. Iowa Code § 306.29, 306.30, 306.32, 306.-33, 306.34.

11. Iowa Code § 306.28. However, if the board of supervisors were to name two of the appraisers, as is permitted by this provision in some circumstances, actual bias of the tribunal might be shown and serve as grounds for a due process challenge to this application of the statute. Plaintiffs have not alleged such application here and hence lack standing to raise this challenge. Further, since the appeal provision, 306.35, provides for de novo review by jury trial in the state district court, the rule of Nickey v. Mississippi, 292 U.S. 393, 54 S.Ct. 743, 78 L.Ed. 1323 (1934), may apply to defeat a due process-biased tribunal challenge to 306.28. However interesting these cases may be in the abstract, it would of course be inappropriate to decide them here.

of a project in which federal funds were used, and that 42 U.S.C. § 4655 requires that Chap. 472 procedure be employed rather than Chap. 306.

It is the court's view that the road project for which plaintiffs' lands were condemned does not involve the use of federal funds. Such funds are to be used in the construction of a bridge which conducts this road over the Cedar River, but this project is discrete from the road-building for which plaintiffs' land was taken. Federal funds are being used only in the building of the bridge, not the road, and § 4655 is therefore inapplicable.

### 42 U.S.C. §§ 1982–1983

42 U.S.C. § 1982 provides:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property.

This statute, designed as it was to prevent racial discrimination in property rights, Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), is of no help to plaintiffs here. Plaintiffs are white citizens and enjoy exactly those rights accorded white citizens whose land is taken under Chap. 306, and thus have no standing to assert a statute aimed at racial discrimination.

42 U.S.C. § 1983 is of no avail to plaintiffs because, as discussed above, they are not deprived by Chap. 306 of any ". . . rights, privileges or immunities secured by the Constitution and laws . . ."

### Arbitrariness of Use of Federal Funds

Next, plaintiffs contend that the procedure used by the Iowa State Highway Commission to determine whether or not federal funds will be expended on a particular project is arbitrary and capricious, denying them due process. As plaintiffs' brief notes, however, the baseline criterion for the use of federal funds must be the availability of such funds at the time the project is approved by the Commission. Here it appears that there simply were no federal funds available at time of approval. A less arbitrary criterion for Commission disbursement than availability is difficult to imagine.

### Iowa Constitution

Finally, plaintiffs claim that eminent domain procedure under 306.28–306.37 violates Iowa Constitution, Article I, §§ 6, 9 and 18.

Article I, § 6 provides that

All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens.

The reasons given for the consonance of Chap. 306 with the 14th Amendment equal protection clause apply here with equal force, and the Iowa Supreme Court has upheld an analogous statutory classification. See Munn v. Independent School Dist. of Jefferson, 188 Iowa 757, 176 N.W. 811 (1920).

Article I, § 9 provides in part that

The right of trial by jury shall remain inviolate . . . no person shall be deprived of . . . property, without due process of law.

Thus, in Iowa a property owner has a constitutional right to trial by jury when his property is taken by eminent domain, Sigafoos v. Talbot, 25 Iowa 214 (1868). Op.Atty.Gen., supra, and § 306.35 provides this.

Article I, § 18 provides in part that

Private property shall not be taken for public use without just compensation first being made, or secured to be made to the owner thereof . . .

Plaintiffs allege Chap. 306 denies them just compensation as guaranteed by § 18. As earlier stated, just compensation is primarily a judicial rather than a leg-

islative or administrative determination. Chap. 306 does all that is required when it speaks generally of "damages" to be compensated, and it does nothing to impede a proper judicial determination of the amount required for just compensation.

It is therefore

Ordered

Defendants' motion for summary judgment granted;

Plaintiffs' motion for summary judgment denied.